Mr. Villa. Good morning, your honors. May it please the court, George Villa on behalf of the appellate, Geovany Guevara. Three issues were raised in an appeal and I'd like to address the issues in the order that they were argued in the brief. The first issue was whether there was sufficient evidence for a conviction of Mr. Guevara and that is whether he caused or attempted to cause the seller, the dealership, to file a misrepresented 8300 form or a form with omissions. There are three elements to that charge, your honors. The first element deals with knowledge. The second element is whether Mr. Guevara caused or attempted to cause and the third element is the motive. The issue that we bring before the court is whether circumstantial evidence can be used to prove the second element and that is with whether the defendant caused or attempted to cause the dealership to file a 8300 form with misstatements, misrepresentations or omissions. I submit to the court that under the facts of this case, direct evidence was necessary to prove that element. Well, there's some testimony at the trial that a salesman told Guevara about the reporting requirement when he brought a Camaro earlier, right? That is correct, your honor, and that goes to the knowledge element. And he recruited his friend to be a straw buyer and paid him a thousand dollars for each transaction? That is also correct, your honor. And the friend, what was his name again? Quiroa? Yeah, he testified at the trial. And that's also true, your honor. It seems the best argument that you have with the limited time that you have is that the best evidence rule was violated and without evidence of those 8300 forms, then maybe there wasn't sufficient evidence to convict him of these crimes. The problem that I see is that there was no objection to the summaries that were offered in the evidence by the government. And so, we apply a plain error standard of review. It seems like you'd have a much stronger argument on appeal if there was an objection to the admission of summaries of the 8300 forms rather than the forms themselves. So, how do you address that issue? Judge, I was the trial attorney in that case and the reason why there was no objection is because the summaries that were introduced into evidence were not summaries introduced, were information obtained by a clerk. But there was no objection? That's correct. To their admissibility? Well, that's correct. Our position is that the government needed to introduce the original. The issue here is not whether a duplicate or a copy of the original form was introduced. This is a completely separate document. And I'd like to remind the court that . . . Has anybody ever seen the original 8300 forms? Absolutely, Your Honor. Have you seen them? The government, they were in the possession of the government. Did you see them? I mean, was there some pretrial discovery? Did you actually see the forms? I had them in my possession, Your Honor. Wouldn't the attempt clause of the statute permit the conviction without the introduction of the form? No, Your Honor, because the issue, the . . . In other words, he didn't have to file it at all if he attempted to have it filed. Well, I think that the jurors needed to know what it is that he attempted to file. I mean, it's the form itself that raises the charge here. And the issue is the content in the form. It's not the form itself. It's the information. But not for an attempt. In other words, what difference does it make what the form says? Well, there has to be something by the defendant. And, Your Honor, that's a good point, and for this reason. When we deal with 8,300 forms, the purchaser, the individual who's paying for the property or the item, has no control over the form. Basically, the form is under the control of the seller, the person who's receiving the money. That individual has 15 days to file the form. In this case, the defendant did everything that he was supposed to do. He told the dealership, the seller, that he was the real owner of the vehicles. He was basically using his friends to put title of the vehicle under his friend's name. Secondly, and more importantly, he told the dealer that it was him. He was paying for these automobiles. There was nothing more for this individual to do. This form was not in his control. Well, if he created a scheme by which the dealership would file the form, wouldn't that be an attempt under the statute even though the form never got filed? But we still need some evidence of that, Judge, and that's the point here. There is no evidence. There is no evidence that there was a scheme between the defendant and the dealership. That's the point here, that we need some type of direct evidence. Judge King recognized— Well, they've got circumstantial evidence from which a jury could infer that there was such a scheme. But because of the facts of this case and because how the procedure is when filing an 8300 form, once— Counsel, he took his friend in there and schemed with him because he knew a form would be filed. Otherwise, he didn't need him. He could put the cards in his own name. The scheme would not be between him and his friend. The scheme would be between— No, no, no. The friend was involved in the scheme. He knew that the forms were going to be filed. That's circumstantial evidence that his knowledge of forms would be filed. And as Judge Wilson points out, one of the salesmen told him before the whole scheme was finally executed. So he knew that. That's true. And that's why he took Q in there and said he would put the card in his name. And there's nothing illegal about that? No, nothing illegal about it except he knew what—he anticipated that the dealer was going to file the form. But we don't know that. No, no, he does. The defendant does. And what does he do? You can infer that the defendant knew that. That's why he took his friend in there. Well, we don't know why he took his friend. He took his friend because he wanted to put— Let's put it this way. He took his friend in there, and it all came out to play just exactly like he anticipated. Well, he took his— And he knew the dealer was going to go along with it because otherwise the dealer would have said, you're the buyer, and we'll put it in your name. Judge, I'm not sure if I'm following the court. The dealer knew— What I'm trying to tell you is there are little pieces of circumstantial evidence. When you put them all together, you draw the inference that he knew exactly what was going to happen, and that's what he intended. Judge, but under the circumstances and under the facts of this case and how the 8300 form is filed— We know that the dealer had to file the reform. And I submit this to the court. It could have been the dealer. The dealer could have his own motive and independent reasons why to lie in that form without the knowledge of the other. Why in the world would the dealer not put his name down? Maybe he was concerned with the defendant. Maybe he didn't feel comfortable, so he decided to go ahead and just use the buyer's name. And he put a Lamborghini, a Ferrari, that kind of an automobile in somebody else's name? Judge, there's nothing improper about that. Houses, planes are always purchased under different names, company names, and so forth. There was nothing illegal about bringing his friend to that dealership and having title of the cars in his friend's name. The issue here is the information that was in the form. Do you want to say anything about the sentencing? Yes, Judge. There was absolutely nothing in the record to support an enhancement for obstruction. The obstruction that was given was based on tax returns that were filed in previous years before the charges in this case. That did not impede or derail or do anything to the investigation of this case. And we feel that that enhancement is improper. Thank you. You've saved your rebuttal time. Thank you. Ms. Hoffman. Thank you, Your Honor. Andrea Hoffman on behalf of the United States. Good morning. At counsel table with me is Elijah Levitt, who was the trial counsel in this matter. Your Honors, I'd like to start and focus on the best evidence rule and more particularly on Government's Exhibit 1. One of the things that I think that is important to clarify for the court is this isn't a summary in the classic sense of the word summary, voluminous evidence summarized down so that just parts and parcel are in the final summary and making it easier to analyze. This is, in fact, a transcript of the forms, and it is said literally in the certification. What rule of evidence would allow a transcript of a form to be admitted? Your Honor, I believe that under – The best evidence rule. You agree that's not applicable here. Your Honor, I believe under Rule 9014, which is self-authenticating public records, this is a self-authenticated public record that was admissible under 9014. And then when you look at 901A as well – excuse me, it's 9024 and 901A. I apologize. This is not a public – this was prepared for purposes of a trial, wasn't it? It was prepared for the purposes of the trial, Your Honor. So any public official can prepare a record, authenticate it, and present it? You don't want to go there, do you, really? Well, the certification issue, Your Honor, about making a – The question is whether or not you have objections. That is entirely correct, Your Honor, that we're under the best evidence rule. But what I was trying to focus on with the summary versus transcript is that it's every piece of information. You can't prepare a summary for a trial and contend that it is a public record. It is an entirety of all the doc information, though, Your Honor. I understand that. It's much more important to the issue. Put together by counsel for a trial is not a public record. It was put together by FinCEN, Your Honor, and certified by them as a true transcript of the records that's in their records. That's all I'm saying is that it's a complete document. You don't want us writing an opinion on that point. No. I want you to just understand that there is no evidence or information that was left out of the – You're telling us that Exhibit 1 has whatever the form had. It did. Thank you, Your Honor. That's exactly what I'm telling you. Thank you. But even if it's admissible, it's assumed for argumentative purposes, it's not the best evidence of the 8300 form. The best evidence is the 8300 form itself or a duplicate. Without a question, Your Honor, that the best practice or better practice in this circumstance would have been the originals of the 8300, but there was no objection. That's why we have a best evidence rule. Otherwise, we don't need a best evidence rule, right? Correct. But there also, when you juxtapose that to the plain error rule, which is intended to create the circumstance where there are contemporaneous objections so that there's an opportunity to correct anything that's wrong in a trial courtroom. What was in the form introduced into evidence? So the form itself, the 8300, would have multiple categories. It has an area for who provides the cash, an area for who is the beneficiary of whatever the cash is purchasing, and then it has a listing of who received the cash. So in this circumstance, this form should have listed Mr. Guevara. I'm going to call him EQ because I have trouble saying the name. I apologize. EQ's name had no need to be on the forms in any form or fashion because he neither provided the cash, and according to the defendant's— His name was on it. His name is on it alone. Mr. Guevara's name is not on it at all. And is Mr. Guevara—yes. I'm good. I'm fine, sir. Do we know from the—I mean, can the government tell us, why didn't you just introduce the 8300 forms or duplicates in the evidence? Why do you need a summary if they're not lost or destroyed? Your Honor, I don't—there is not a transcript. It's not transcribed in the record of this trial. I can answer the question for the court if you'd like me to, but it's not transcribed in the record. But I can tell you that SAMHSA's employees took the fifth, and at least one of those witnesses came to the courtroom to take the fifth, and the documents were obtained from them. Now, was there some sort of pretrial discovery such that the defendant's counsel saw the 8300 forms? I believe the answer to that is yes, Your Honor, and they received the transcription document. And so when they received the copies of the evidence that was to be used at trial, they received the transcriptions. And that happened all before trial. So they had both forms. And part of how we know the dependability and the accuracy of the documents as well, Your Honor, is if you look at Governments Exhibit 8 and 9, those are the two forms. That's the original 8300 and the transcript of the 8300 for the Camaro purchase, which was also done with cash, at the one dealership where Mr. Guevara had no business relationship with or personal relationship with anybody at the dealership. And there the form was. . . That's the one where the salesman talked. . . Correct. Correct. This is what we're going to do. Exactly, Your Honor. And that was that dealer's first time ever having a cash deal. He didn't know what to do, and his manager explained it to him, and then he turned and explained it to Mr. Guevara. We also know that Mr. Guevara knows that this is what he's doing and what he's intending to do because Mr. Guevara exercised control over everything to do with these deals, including when this paperwork was completed for the three cards of conviction, which are at Governments Exhibits 7B, C, and D, all of which are in our supplemental appendix. There's a letter in there informing Mr. E.Q. that the 8300 was sent to the federal government. So Mr. Guevara had that. If the best evidence rule was violated, would the evidence be sufficient to convict him? Yes, Your Honor, it would be. Based on what evidence? Because there is the trial testimony of Mr. Guevara, Mr. E.Q., excuse me, about how these deals happened, how they worked, what was going on, all of which lays out the facts of what happened. There are the three exhibits that I just mentioned that show the falsity of records that were completed. All of those records, there were false records submitted to the state as well as to the Fed that were charging the federal documents, but there's record of those federal documents having been sent to the IRS. So as Judge Rubino said, under the attempt prong of that statute, you could still convict readily under the sufficiency of evidence. Tax returns were used to enhance his sentence because they obstructed justice? How can that constitute an obstruction of the investigation or the prosecution if the tax returns were filed before this incident took place? There were three grounds which the court used for the obstruction enhancement, Your Honor. The first was the nature of the offense conduct itself and the use of the straw buyer to conceal, and as this court found in Tampas, for example, efforts by the defendant to, when his goal is to conceal the nature of the crime and the effort of the crime and false documents are created for the purpose of doing so, even when there's evidence, as there was in Tampas, that the defendant may or may not have requested the false documents to be generated, that can be sufficient for obstruction. So the straw buyer characteristic alone under Tampas would work. You're saying that, but did the district court make that factual finding? It did. District court did say that the straw buyer… He said it was a significant impediment to the course of the investigation. He praised the agents for being able to work past it and through it, but considered it a significant impediment. Then he also considered the lies that were said to the agents about the source of the money or the reasons for why as, again, being an impediment to their determination of the truth, which would have gone to the issues at trial, prosecution grounds. Well, when did he make those statements? When he was interviewed? Yes, he did. Well, he made them in—excuse me, Your Honor, let me be more exact for you. He made them in two different traffic stops he lied about because when he gets stopped, he's driving a vehicle that's not his. He has to explain that he is a vehicle he has a right to have control over, and he bothered to explain in those contexts. One officer he told he bought with money for having won a lifelong lottery of $5,000 per week. That's not what the district court relied on, is it? The district court relied upon the lies to the officers and the sets of lies to the officers happen in the traffic stops where there are two different cops who testified and then in the interview that happened at his home. And they're not—the court, I don't believe, from the context of the transcript, although this is not said specifically— Those weren't the PSI. They were summarized, were they not? They were. Well, he lied when the officer came in to address him. He said, I had to go pick up my kid from school. That one was set aside, Your Honor. The court did not use that, specifically said that that wasn't sufficient grounds. That happened in the suppression hearing where he testified about what he was saying in part, and the court said that wasn't grounds. So that's not the lies. That's why I was specifying sources. But he acknowledged on the first interview, once his wife was out of the picture, that he had done this. He acknowledged that he had done the scheme, Your Honor, but he still lied about how he paid for them and what he was doing it for. And they then, from that interview, went on and did further investigation related to the insurance issues, the therapy clinic, et cetera. They did extensive more investigation about that in case there would be any trial litigative defense issue on it. So it did slow down and impede the investigation, Your Honor. As to the tax returns, and I didn't mean to not get to them, Your Honor. I was building toward that. As to the tax returns, there's two issues related to that. One of the tax returns that the court took particular offense to was from 2012, which is a tax return that would have been filed in the spring of 2013 in the midst of this scheme. The second tax return, which was never filed, would have been filed in the spring of 2014. The interview of Mr. Guevara, where the lies that I was just discussing with Judge Rebrano occurred, was in May of 2014. The investigation was well in its midst when Mr. Guevara did not file his 2013 tax return. He bought $637,000 worth of cars from Sanford alone. That's not counting the nearly $50,000 Camaro. Just from Sanford alone in 10 months, using at least $280,000 worth of cash. That cash was undisclosed income, unsourced income to the government in any form in which his custody and control and access would have been shown or known to the government. The filing of these false returns and the filing of the false 2012 tax return and no tax return at all in 2013 were integrally, inextricably intertwined components of concealing his custody and control of this undisclosed and unjustifiable based on his employment history, which is evidence that went in the trial record. He had no basis to have this kind of cash or custody or control over this kind of money. Both pieces are relevant conduct to one another for what he was trying to do, which was conceal his control over this money. Was Mr. Santista Van prosecuted? The owner of Sanford? He's the guy who filled out the forms, right? That means $600,000 worth of cars and cash. I don't believe that he has been, Your Honor. It's not a matter of this trial record. I can tell you he was not indicted or discussed of being charged in this trial. I can tell you he was. E.Q. was given immunity, I take it? That also is not in the record, Your Honor, but he was not. I don't have a reason to believe that he was given any kind of formal immunity, but he was not charged, Your Honor. The three prongs are whether his conduct related to the investigation, prosecution, or sentencing. So you are relying on investigation, that is? And prosecution, Your Honor, because the lies about the source of the monies and the reasons for why he's doing this, the government necessarily had to debunk those explanations in preparation for any potential defense theories that would go on during the trial. Mr. Guevara chose not to take the stand, as is his right. He wouldn't know that until the government arrests. Right. So we debunked them beforehand so that we were ready and be prepared for whatever he might do with the various, the four sets of lies about lotteries, about therapy clinics, about marital troubles, about insurance. Did he make an opening statement or waive? They made an opening statement, Your Honor, in which he specifically said, I was the true owner and I told them that I was the true owner and I hired a straw buyer. That was in the opening statements, Your Honor. Your Honors, if you have any questions regarding the sufficiency of the evidence and you would like me to walk through that more specifically, I'd be happy to. If there are no other questions, I would ask that you affirm the conviction and the sentence in this case. Thank you. Your Honors, there would have not been any conviction had the 8300 forms or the summaries been introduced. The government is incorrect by stating that they could have proven this case by using the testimony of EQ. EQ was not present in any meetings, EQ, between the defendant and the dealership. He was not there when the money was transferred or handed over to the dealership. And the charge in this case is what the information in the forms itself. So it is incorrect to say that the government could have proven this case circumstantially without the summaries or the forms. The forms is the best evidence rule. The forms should have been introduced. They had the forms in their possession. They had the ability to introduce the forms through the personnel of the dealership. The government could have given those individuals immunity and subpoenaed them to testify and introduce the forms through them. So they did have the ability. And I go back to my original argument. We're not dealing here with copies or duplicates. We're dealing here with a summary that was prepared by some clerk who got the information from a database. The forms themselves have different parts to it. And the more important part is the one that is signed by the individual who's receiving the cash, and it's dated. And that is critical evidence for the jurors to determine whether the defendant . . . Let's assume that immediately prior to the individual signing the form, he was arrested. Would that constitute an attempt by the defendant to have the form filed unlawfully? No, Judge. For this reason, once the defendant . . . And this is in the record. It came out as evidence that he told the dealership that he was the owner and he was the cash. Once he hands over the cash, he has no control over that form. That form is in the sole control of the dealership. They have 15 days to do whatever they want with that form, put whatever information that they . . . Do you think the form has to be filed in order for the crime to be completed? Yes. Yes, I do. Yes, I do. There's a 15-day window, and I think that once the form is filed, if it's filed incorrectly with misrepresentation, that completes the crime. In regards to the comments made as to the enhancement for the obstruction, the government argues that the obstruction was the lies of the tax returns. That happened years before this case. And that's what they . . . they had the ability to show a motive with those tax returns. So how can they come and say now that it somehow impeded their investigation? What about the statements made by the defendant to the police officer and to do in the course of the investigation that proved not to be correct? Wouldn't that do it? Your Honor, there were two statements made. The first statement was when they initially knocked on the door of his residence, and his wife was right next to the defendant. Right. We'll put that one aside. Two minutes, and it happened immediately. Two minutes after that, they take him to the side by himself. He comes clean. He does tell the investigators and the agents in the case, yes, it is true. These cars are mine. I basically used my friend just so I could put the title and the cars in his name. And it was my money. I paid for them, and the dealership knows about it. What's interesting is that during that interview, the agents never raised the issue or the questions regarding the 8300. They never confronted the defendant as to the 8300 forms, which is what he was charged with. Well, then he made some statements to the police officer. I think government counsel mentioned that, intended to mislead or throw him off as to who owned the cars. No, absolutely not. The correct statement and evidence is that he came clean. He told the agents, it is my car. I'm the true owner of these vehicles. If we go through the record, is there anything . . . you're telling me there's no evidence at all where he mentions the 8300 forms at all? During the interview of the defendant? During the investigation of the case when he was . . . No. The defendant is never confronted with the 8300 form. He's never asked, why did you have anything to do with this? Did you ask them to put the information of your friend in the 8300 form? He's never confronted. The only questions and the only thing he's interviewed about is who owns the cars and who paid for the cars. And he came clean. He told them it was him. I think we have your case. Thank you, Your Honors.